[Crim. No. 5744.   Second Dist., Div. Three.   Feb. 26, 1957.]

THE PEOPLE, Respondent, v. LOUISE WILLIAMS et al., Defendants; ROSE SKIPPER et al., Appellants.

Walter L. Gordon, Jr., for Appellants.

Edmund G. Brown, Attorney General, Norman H. Sokolow and Morris Schachter, Deputy Attorneys General, for Respondent.

VALLÉE, J.—By information defendants-appellants Rose Skipper and Henry Thomas, together with Louise Williams and Evelyn Moore, were charged with burglary in that on February 22, 1956, they entered the store of Joe's Food Town with intent to commit theft therein.   In a trial by the court without a jury each defendant was found guilty.   Skipper was sentenced to California Institution for Women.   She appeals from the judgment and the order denying her motion for a new trial.   Thomas was granted probation.   He appeals from the order denying his motion for a new trial.   The contentions are that the corpus delicti was not established and the evidence is insufficient to sustain the findings of guilt.

About 8 a. m. on February 22, 1956 Henry Young, the owner of a grocery store in Huntington Park, observed

Skipper, Williams, and Moore in his store. The women walked around about 15 minutes and left without making a purchase. About 9:30 a. m. an employee of Lloyd's Market in Huntington Park observed the three women enter the market. On February 22 M. Sakamoto operated a grocery store on East First Street in Los Angeles from which articles were later found in defendants' possession.

Joe's Food Town was a store on Brooklyn Avenue in Los Angeles. About 11 a. m. on February 22 Notrica, an employee, saw all four defendants in the store. Thomas purchased one pear then went out and stood in front of the store. Williams and one of the other women walked out of the store through the grocery and produce departments. Notrica testified he believed Skipper was the woman with Williams and that the other woman, Moore, was sitting at the store's hot dog stand.

As Notrica stood watching the two women walk out of the store, Williams dropped a can of coffee to the floor. She picked it up immediately. Notrica waited for her to put it back into a bag but she did not do so. Instead she walked out to an automobile parked directly in front of the store at a fireplug. Notrica hurriedly checked to see whether Williams had paid for the coffee, then ran to the automobile and opened the rear door. All four defendants were in the automobile. Thomas was in the driver's seat. The floor of the automobile was covered with cans of coffee, canned ham, juice, and jars of mayonnaise. Notrica accused Williams of having taken the coffee without paying for it. He picked up the can from the seat of the automobile and Williams stepped out. Thomas drove away and Notrica obtained the license number. The police were then called. Before they arrived Williams departed. In addition to the can of coffee, a can of Hafnia ham was missing from the store.

The four defendants were arrested about noon. There were various items of merchandise on the floor of the automobile: three cans of ham and several cans of Folger's coffee from Young's store; two jars of mayonnaise and a can of orange juice from Sakamoto's store; the can of Hafnia ham from Joe's Food Town, several 2-pound cans of Hills Bros. coffee, cans of corn, other cans of ham, a sack of potatoes, and two bottles of Coca-Cola.

Skipper told a police officer her name was Waters; later she admitted it was Skipper. She told him the group would meet in Watts and either she or the other women would go

with Thomas "on these little tours picking up coffee." The officer asked her if it was true they had set a goal of ten 2-pound cans of coffee each; Skipper replied affirmatively and said it was kind of a standard—that this way it made about $8.00 for them and they could give Thomas $4.00 or $5.00 each when the day was over. She told the officer she had not gone into Joe's Food Town, that she had bought a hot dog and had remained on the sidewalk eating it while Williams and Moore went inside. She said the mayonnaise had come from a little place on Brooklyn Avenue before they got "to the market where we were caught." He asked her about the hams. She said each of them had taken a ham "out of the Chinaman's place," the mayonnaise had come from a place on Brooklyn Avenue operated by a Chinese or Japanese, and she had entered the store where the mayonnaise was taken.

Thomas took a police officer to the various markets he (Thomas) had visited with the women. He told the officer that the women got "all sorts of things. But mostly it is coffee." The officer asked Thomas how they disposed of the merchandise. Thomas said he would drive the women each time they wanted to go, they would pick up the merchandise and then peddle it house-to-house in the vicinity of Watts; the women ordinarily gave him $3.00 or $4.00 apiece for gas money.

Skipper testified she was in the automobile with the other defendants in the area of Joe's Food Town on February 22; she remained in the car and did not enter any grocery store that day and did not take anything out of any store; she did not know anything which had not been paid for had been taken from a store. She testified she was sitting in the back seat. She first denied having seen the merchandise found in the automobile as depicted in a photograph. Later she admitted that some of the merchandise was in the back seat but she guessed she did not notice it. Thomas did not testify.

A can of coffee and a ham were in Joe's Food Town immediately before defendants entered. Shortly after they left, the can of coffee and the ham were missing and they were later found in Thomas' automobile. They had not been sold and the proprietor had not given anyone permission to take them. The corpus delicti was established. (*People* v. *Kross*, 112 Cal.App.2d 602, 609 [247 P.2d 44].)

The evidence was manifestly sufficient to sustain the findings of guilt. As to Thomas, it is inconceivable that any other finding could have been made. As to Skipper, the

720

reasonable inferences deducible from the evidence warrant the conclusion she participated in the burglary of Joe's Food Town. She argues she merely sat on a stool outside eating a hot dog. However, Notrica testified he believed Skipper was the person he saw walking out of the store with Williams at the time the latter dropped the can of coffee. The evidence was sufficient to establish a conspiracy between the four defendants to burglarize stores, including Joe's Food Town. Skipper, being a party to the conspiracy, is bound by the acts of her coconspirators done in pursuance and furtherance of the conspiracy. Further, a reasonable inference from the evidence is that Skipper aided and abetted her codefendants in the commission of the offense. All persons concerned in the commission of a crime, whether they directly commit the act constituting the offense or aid and abet its commission, are principals. (Pen. Code, § 31.)

As to defendant Skipper, the judgment and the order denying the motion for a new trial are affirmed. As to defendant Thomas, the order denying a new trial is affirmed.

Shinn, P. J., and Wood (Parker), J., concurred.